ROBERTS, J.,
 

 for the Court.
 

 ¶ 1. This appeal focuses on the Mississippi State Department of Health’s (MSDH) decision to revoke two “Certificates of Need” (CONs) formerly granted to Brentwood Health Management of Mississippi, LLC. To paraphrase, the MSDH revoked the CONs at issue based on its conclusion that Brentwood had failed to substantially undertake development of the project contemplated by the two CONs. Brentwood appealed to the Hinds County Chancery Court, and the chancellor affirmed the MSDH’s decision. Brent-wood appeals and raises four issues. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. There are two CONs at issue, both of which were held by Brentwood.
 
 [1]
 
 One CON was originally awarded in 1996. It allowed Brentwood to establish twenty beds for the treatment of child and adolescent psychiatric conditions. Miss.Code Ann. § 41 — 7—191 (4)(a)(iii) (Rev.2005). The other CON was originally awarded in 1997. It allowed Brentwood to establish sixty beds for psychiatric residential treatment. Miss.Code Ann. § 41-7-191(3)(b) (Rev. 2005). Although the CONs date back to 1996 and 1997, our present purposes require that we focus on events that transpired after the MSDH granted Brent-wood’s request to amend both CONs on September 5, 2001.
 

 ¶ 3. As of the 2001 amendments, the beds contemplated by the CONs were to be placed in a proposed 40,000 square foot facility to be built at a specific site west of the Vicksburg Medical Center in Warren County, Mississippi. Additionally, the allowed expenditure cost was increased to approximately $4,000,000. Brentwood had
 
 *777
 
 one year from that date to complete the facility and to get the eighty beds into operation. If Brentwood failed to complete the project or request a six-month extension by that time, Brentwood’s CONs would expire.
 

 ¶ 4. On February 24, 2005, approximately two years and five months after the September 2002 deadline, the MSDH informed Brentwood that a progress report was due on or before March 11, 2005. Brentwood fulfilled the MSDH’s request. Brentwood estimated that the project was 2% complete at that time. Brentwood also reported that it had spent $200,000 on the project and that it was investigating potential construction locations. Brentwood did not report any progress on completing the facility at the location contemplated by the 2001 amendments to the CONs. Finally, Brentwood said that PSI was preparing a pro forma financial statement and a business plan. Brentwood also filed a request for a six-month extension to complete the project.
 

 ¶ 5. On August 8, 2005, the MSDH acknowledged receipt of Brentwood’s progress report and Brentwood’s request for an extension. The MSDH notified Brent-wood that Brentwood’s request for an extension was denied because it was untimely. The MSDH informed Brentwood that it had to demonstrate substantial progress toward the project by September 2005.
 

 ¶ 6. In January 2006, the MSDH requested another progress report. Brent-wood had not responded as of August 2006, so the MSDH repeated its request. On September 12, 2006, the MSDH received Brentwood’s second progress report. Yet again, Brentwood did not report any progress regarding the facility contemplated in the 2001 amendments. Instead, Brentwood said that PSI was still trying to find an appropriate location for the project and that it was still determining whether construction of the project was feasible. Brentwood estimated that the project was 3% complete at that time, as compared to its 2005 progress report in which Brentwood estimated that the project was 2% complete. In other words, after eighteen months, Brentwood estimated that it was 1% closer to completing the project.
 

 ¶ 7. By way of a letter dated December 18, 2006, Samuel H. Dawkins, the Director of the Office of Health Policy and Planning, put Brentwood on notice that the MSDH intended to revoke Brentwood’s two CONs.
 
 [2]
 
 Dawkins also notified Brent-wood that it had a right to a hearing regarding whether the MSDH should revoke the CONs. Brentwood exercised its right to a hearing.
 

 ¶ 8. On May 10, 2007, a MSDH hearing officer conducted the revocation hearing. The MSDH called Dawkins as its first and only witness. Brentwood called four witnesses: (1) Michael Carney, Brentwood’s chief executive officer; (2) Philip Cook, the president of PSI’s Mid-America Division; (3) Darren Rozas, an architect; and (4) Philip Merideth, M.D., Brentwood’s chief medical officer. Suffice it to say, Carney and Cook generally testified that Brent-wood preferred to move the project from Warren County to existing facilities in Rankin County, Mississippi, and Lauder-dale County, Mississippi. Rozas testified that Brentwood hired him to analyze the feasibility of locating property for the facility and building on that unimproved property, as well as renovating an existing facility at another alternative site. None
 
 *778
 
 of Rozas’s efforts were focused on building the proposed facility at the location established in the 2001 amendments.
 

 ¶ 9. On July 31, 2007, the hearing officer rendered her findings of fact and conclusions of law. Broadly speaking, the hearing officer reported that the issues at the hearing were: (1) whether the MSDH had the authority to revoke a CON established by the direction of the Legislature; (2) whether the CON had expired; and (3) whether Brentwood had substantially undertaken completion of the project. The hearing officer found that “the [MSDH] did not abuse its discretion when making [its] determination that [Brentwood] had not substantially undertaken construction or other preparation for the project, and had not made a good faith effort toward the project.” Accordingly, the hearing officer recommended that the State Health Officer “concur with the [MSDH]’s withdrawal and revocation of the CONs.”
 

 ¶ 10. The hearing officer mentioned that, based on an unrelated request, the Mississippi Attorney General’s Office had recently issued an advisory opinion regarding the time a CON holder has to complete a project contemplated by a CON and the MSDH’s authority to revoke a CON. It bears mentioning that the attorney general’s office did not issue its advisory opinion until after the hearing. Stated differently, the attorney general’s opinion was not available before or at the time of the hearing.
 

 ¶ 11. At the next monthly CON meeting, interim state health officer F.E. Thompson, Jr., M.D., MPH, followed the hearing officer’s recommendation and entered a final order revoking Brentwood’s CONs. Specifically, Dr. Thompson stated, “I have reviewed the record prepared on [the CONs] and have determined that ... Brentwood ... [has not] substantially undertaken construction or other preparation to complete the ... project, and [has] not made a good faith effort toward the project.”
 

 ¶ 12. Brentwood appealed to the Hinds County Chancery Court. On December 14, 2007, the chancellor held oral arguments. Approximately one month later, the chancellor entered an order and opinion. According to the chancellor, the issues were: (1) whether the MSDH had the authority to revoke the CONs; (2) whether the MSDH acted arbitrarily and capriciously when it revoked the CONs; and (3) whether the hearing officer utilized an improperly deferential standard of review. Ultimately, the chancellor found that the MSDH had the authority to revoke the CONs and that its decision was neither arbitrary nor capricious. Additionally, the chancellor held that the MSDH’s “actions were based upon a reasonable interpretation of the subject statutes and the evidence contained in the record.” Aggrieved, Brentwood appeals.
 

 STANDARD OF REVIEW
 

 ¶ 13. As with appeals regarding CON applications, we conduct a de novo review of the chancellor’s decision, but we are “constrained by the same familiar standard of review under which [the chancellor] operated.”
 
 Miss. State Dep’t of Health v. Baptist Mem’l Hosp.-Desoto, Inc.,
 
 984 So.2d 967, 974(¶ 12) (Miss.2008). That standard of review has been described as “quite limited.”
 
 St. Dominic-Jackson Mem’l Hosp. v. Miss. State Dep’t of Health,
 
 728 So.2d 81, 83(119) (Miss. 1998). The limits in this instance are set forth by statute, which specifically provides that the MSDH’s decision:
 

 shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the court finds that the order ... is not supported by substantial evidence, is contrary to the manifest weight
 
 *779
 
 of the evidence, is in excess of the statutory authority or jurisdiction of the ... [MSDH] , or violates any vested constitutional rights of any part involved in the appeal.
 

 Miss.Code Ann. § 41-7-201(2)(f) (Rev. 2005).
 

 ¶ 14. “This is nothing more than a statutory restatement of familiar limitations upon the scope of judicial review of administrative agency decisions.”
 
 St. Dominio-Jackson,
 
 728 So.2d at 83(¶ 9). In other words, “[t]he decision of the hearing officer and [the] State Health Officer is afforded great deference upon judicial review by this Court, even though we review the decision of the chancellor.”
 
 Id.
 
 However, when issues involve questions of law, we conduct a de novo review.
 
 Oktibbeha County Hosp. v. Miss. State Dep’t of Health,
 
 956 So.2d 207, 208-09(¶5) (Miss.2007).
 

 ANALYSIS
 

 I. THE MSDH’S AUTHORITY TO REVOKE
 

 ¶ 15. Brentwood argues that the MSDH did not have the authority to revoke the CONs at issue. Brentwood’s reasoning stems from the fact that the CONs at issue were not issued after an application, but they were instead directed by the Mississippi Legislature.
 
 [3]
 
 According to Brentwood, because the Legislature authorized the CONs, the CONs are beyond the MSDH’s authority to revoke.
 

 ¶ 16. As authority for its position, Brentwood cites the Mississippi Supreme Court’s decision in
 
 Oktibbeha County Hospital,
 
 956 So.2d at 209-11 (¶¶ 7-18). We interpret those two pages of the
 
 Oktibbeha County Hospital
 
 case as a distinction of the CON application process regarding discretionary-issued and mandatory-issued legislative CONs.
 
 Id.
 
 at 209(¶ 9). In other words, the supreme court discussed the concept that in the event that the Legislature requires the MSDH to issue a CON by using language that includes the word “shall” rather than “may,” the Legislature directs the MSDH to waive the CON application process.
 
 Id.
 
 at (¶ 10). However, nothing in the
 
 Oktibbeha County Hospital
 
 decision pertains to whether the MSDH may revoke a CON authorized by the Legislature.
 

 ¶ 17. Language in the statutes that established the CONs indicates that the Legislature did not intend for the CONs to exist in perpetuity. Instead, the CONs at issue had a specific legislatively-enacted expiration date.
 
 [4]
 
 Pursuant to Mississippi Code Annotated section 41 — 7—191 (4)(a)(iii):
 

 If by January 1, 2002, there has been no significant commencement of construction of the beds authorized under this subparagraph ..., or no significant action taken to convert existing beds to the beds authorized under this subpara-
 
 *780
 
 graph, then the [CON] that was previously issued under this subparagraph
 
 shall expire.
 

 (Emphasis added). The Legislature clearly gave Brentwood a deadline, and it fell to the MSDH to determine whether Brent-wood had “significantly] commence[d] construction of the beds” or whether Brent-wood had taken “significant action ... to convert existing beds to the beds authorized” by the CON. As for the second CON, pursuant to Mississippi Code Annotated section 41-7-191(3)0»), “[t]he [MSDH], on or before July 1, 2002, shall transfer the [CON] authorized under the authority of this paragraph (b), or reissue the [CON]
 
 if it has expired,
 
 to River Region Health System.” (Emphasis added). Again, the Legislature gave Brentwood a deadline that depended on a determination by the MSDH.
 

 ¶ 18. Most significantly, pursuant to Mississippi Code Annotated section 41-7-195(4) (Rev.2005):
 

 If commencement of construction or other preparation is not substantially undertaken during a valid certificate of need period or the [MSDH] determines the applicant is not making a good faith effort to obligate such approved expenditure,
 
 the [MSDH] shall have the right to withdraw, revoke or rescind the ICON].
 

 (Emphasis added). Nothing in section 41-7-195(4) indicates that the Mississippi Legislature intended to limit the MSDH’s CON revocation power to only those CONs that are not authorized by statute. Accordingly, we find no merit to Brentwood’s claim that the MSDH exceeded its authority when it revoked the CONs.
 

 II. DEFERENCE BY THE HEARING OFFICER
 

 ¶ 19. Under a heading titled “standard of proof’ of the hearing officer’s findings of fact and conclusions of law, the hearing officer stated:
 

 Due to the [MSDH’s] issuance of its notice of intent and its finding, [Brentwood] has the burden to show the [MSDH]’s finding is “arbitrary and capricious” and without “substantial evidence” or in the alternative, demonstrate substantial compliance with substantial progress on the project. Generally, the [MSDH] is afforded “great deference” and has a presumption in favor of its decision. Therefore, the evidence presented by [Brentwood] would have to show that evidence relied upon by the [MSDH] in this matter is not based on reason or judgment and [that it is] contrary to the applicable criteria.
 

 The hearing officer then proceeded to analyze the evidence presented during the hearing under a heading titled “analysis of the evidence.” Under a heading titled “summary and conclusion,” the hearing officer stated as follows:
 

 After considering all the testimony and evidence at the hearing regarding the [MSDH]’s intent to withdraw/revoke [the CONs], I find the [MSDH] did not abuse its discretion when making it’s [sic] determination that [Brentwood] had not substantially undertaken construction or other preparation for the project, and had not made a good faith effort toward the project. Therefore, I respectfully recommend [that] the State Health Officer ... concur with the [MSDH]’s withdrawal and revocation of the CONs.
 

 ¶ 20. Brentwood claims the hearing officer improperly applied a deferential standard of review to the MSDH’s notice of its intent to revoke the CONs. Brent-wood correctly claims that the hearing officer was obligated to make original recommended findings of fact and conclusions of
 
 *781
 
 law. According to Brentwood, the hearing officer was reversibly deferential to the notice of intent to revoke the CONs, which was not a factual determination at all.
 

 ¶ 21. In the “analysis of the evidence” portion of the hearing officer’s recommended findings of fact and conclusions of law, the hearing officer once stated that Brentwood presented several arguments as a “rebuttal to the [MSDH]’s finding of lack of substantial progress on the project.” At another point, the hearing officer stated that Brentwood’s arguments that there had been substantial progress on the CONs “[would] be analyzed in their totality against the finding of the MSDH that there has been a lack of progress on the project.”
 

 ¶ 22. However, while Brentwood correctly argues that the hearing officer was obligated to make original conclusions instead of deferring to a finding by the MSDH that did not yet exist, the substance of the hearing officer’s analysis indicates that, despite the inclusion of deferential language, the hearing officer fulfilled her obligation to weigh the evidence. The hearing officer weighed Brentwood’s argument that by lobbying the Mississippi Legislature to amend the statutory sections at issue, Brentwood had been making progress toward completion of the project. The hearing officer stated that:
 

 this does not show any progress on the project, but rather supports the [MSDH]’s position that there is no progress on the project. Further, these efforts suggest that [Brentwood] was not interested in pursuit of the project as amended [on] September 5, 2001. It appears that [Brentwood] took a risk in not taking steps to construct the project, but rather put all its efforts behind lobbying the Mississippi Legislature for authority to move the beds. This risk taken by [Brentwood] and its decision to not proceed with the project [have] to be construed against it and not the [MSDH],
 

 The hearing officer then addressed Brent-wood’s evidence that it had been studying the feasibility of the project, drafting pro forma financial statements, “and other business analysis.” The hearing officer noted that, when the CONs were amended in 2001, “pro-formas and other business analysis had been done on the project.” The hearing officer then concluded, without deferring to the MSDH, that evidence of further analysis of the project in the form of new pro forma financial statements and other business analysis does not demonstrate progress, especially because Brentwood presented no justifiable reason for any further analysis.
 

 ¶ 23. Next, the hearing officer addressed Brentwood’s argument that it had made progress on the project by continuing to search for possible locations for a facility. The hearing officer stated that:
 

 it should be noted that in the application for the amendment of the CONs, there is an identified location for the proposed facility. There was no reasonable basis or explanation on behalf of [Brentwood] of why it was necessary to relocate the facility. Further, [Brentwood] presented two options, new construction on a tract that it paid an option to purchase on [sic] in May of 2007 and recent acknowledgment of an intent to lease the space of the Marion Hill building, but both were in its initial stages of “due diligence.” Further, [Brentwood] could not present details on either project. The fact that [Brentwood] is not focused on one solution for the completion of the CONs, [sic] tends to support the [MSDH]’s assertion that lack of progress existed and still exists. Moreover, the finder of fact has to account that actions [Brentwood] presented into evi
 
 *782
 
 dence on about [sic] the actions it took after the [MSDH]’s notice of inten[t] to ■withdraw/revoke, [sic] supports the [MSDH]’s assertion and position that [Brentwood] had been in default of not making substantial progress on the CONs.
 

 The hearing officer distinguished the MSDH’s notice of intent from the MSDH as the fact-finder. Additionally, it is clear that the hearing officer acted as a finder of fact when she found that: Brentwood’s assertions were not reasonable; Brent-wood was not focused on a means to complete the project; and Brentwood’s actions support a conclusion that Brentwood failed to make “substantial progress on the CONs.”
 

 ¶ 24. Next, the hearing officer stated, “[i]n weighing all the evidence presented, the evidence and testimony suggests [sic] that in fact a regression of the project has occurred.” The hearing officer based this clear finding of fact on the following:
 

 at the time that the amendment of the CONs was approved, the project had an identifiable location, plan, and capital expenditure cost. As of the hearing!,] it is clear that the project does not have [an] identifiable location, plant,] and capital expenditure cost. At a hearing of this nature, it would be expected that problems and special issues would be presented by [Brentwood] about why the project is not complete, not issues as to lobbying, feasibility, and site location as presented by [Brentwood] in this case. It appears that [Brentwood] presented good reasons that it should continue its efforts in lobbying the Mississippi Legislature for authority for beds at its other facilities, but it is also clear that this should be done without the distraction of additional investigation of its options in regards to the CONs it holds that are restricted to a facility that must be located in Warren County, Mississippi.
 

 Again, the hearing officer obviously acted as a fact-finder and did not defer to any finding by the MSDH. The hearing officer noted that she weighed all the evidence presented and that “in fact a regression of the project has occurred.” To find that the hearing officer conducted a deferential review purely on the basis that the hearing officer used such language as a preliminary matter to conducting what is obviously not a deferential review of the evidence would be to favor form over substance.
 

 ¶ 25. The hearing officer’s misstatement appears to have been exacei'bated by the nature of the MSDH’s administrative revocation process. When Dawkins put Brentwood on notice that the MSDH intended to revoke the CONs, the MSDH, through Dawkins, essentially notified Brentwood of its opinion that it was appropriate to revoke the CONs and intended to do so without further proceedings unless Brentwood exercised its right to have a revocation hearing. In a sense, the MSDH’s intent to revoke the CONs was a quasi-finding, but it was not one that was entitled to a deferential review. Consequently, the hearing officer should not have included such language in her findings of fact and conclusions of law, but a careful review indicates that the hearing officer acted according to her mandate to make recommended findings of fact and conclusions of law to the State Health Officer. To be imminently clear, this opinion is not to be construed as a conclusion that the improper inclusion of such language is never reversible error. Instead, we merely find that, under the precise circumstances of this case, the hearing officer’s improper use of such language, in and of itself, does not rise to the level of reversible error when viewed in light of her actual findings. Accordingly, we find no merit to this issue.
 

 
 *783
 
 III. RELIANCE ON AN OPINION BY THE ATTORNEY GENERAL
 

 ¶ 26. On May 8, 2007, Representative Bryant W. Clark wrote a letter to the Mississippi Attorney General requesting an advisory opinion. Representative Clark listed four specific issues regarding the scope of his request:
 

 1) Does a CON automatically expire or elapse without further action on part of its holder to obtain an extension prior to the expiration or elapse?
 

 2) After an issued CON has expired, can a holder later file for an extension of the time thereof?
 

 3) Because a CON is expired, must the [MSDH] cite the expiration and take action under Section 41-7-195(4) to withdraw, revoke, or rescind the certificate?
 

 4) Does the [MSDH] have the authority under the CON law to grant an extension to a holder of a CON after such has expired or elapsed according to a specified time period?
 

 On June 15, 2007, the attorney general’s office issued an advisory opinion. It should be noted that the attorney general’s office issued its advisory opinion after the revocation hearing, but before the hearing officer rendered her findings of fact and conclusions of law.
 

 ¶ 27. When the hearing officer rendered her findings of fact and conclusions of law, she discussed the first three questions addressed in the attorney general’s opinion. The hearing officer summarized the attorney general’s opinion regarding those three questions, and then she stated as follows:
 

 Based on the official opinion, it has been advised that a CON is only valid for [the] time stated thereon, and the [MSDH] has the discretion whether or not to grant an extension and whether or not to withdraw, revoke or rescind the CON. Additionally, the [MSDH] determines whether the holder has “substantially undertaken” construction or other preparation under Mississippi Code [Annotated] [s]eetion 41-7-195(4). Since it is clearly established that the CON[s] in question ceased to be valid after September 5, 2002[,] and the [MSDH] has not granted any extension of the CON[s], then the inquiry in this case has to be limited to whether under the facts and circumstances has the [MSDH] abused its discretion in finding that the CON holder has not “substantially undertaken” construction or other preparation during the period of the CON[s], Considering the fact that the CON holder produced no evidence that any action was undertaken on the project during the valid period of the CON[s] ..., then a directed verdict in favor of the [MSDH] would have been appropriate; however, as analyzed below, even if [the] actions after the valid period are reviewed and considered, such fails to suggest that the [MSDH] has abused its discretion in finding insufficient progress on the CON project and that the CON[s] should be withdrawn, revoked or rescinded.
 

 ¶ 28. Brentwood claims the hearing officer committed reversible error when she relied on an opinion from the attorney general because that opinion was issued after the revocation hearing. Brentwood argues that the hearing officer failed to follow Chapter 5, Section 101.01 of the MSDH’s CON Manual, which holds that the State Health Officer “shall consider only the record in making his decision; he shall not consider any evidence or ma
 
 *784
 
 terial which is not included therein.”
 
 [5]
 
 Additionally, Brentwood properly notes that an opinion from the Mississippi Attorney General is “merely a persuasive authority” and is not binding upon this Court or any other court.
 
 See State ex rel. Holmes v. Griffin,
 
 667 So.2d 1319, 1326 (Miss.1995).
 

 ¶ 29. Although all four issues could be considered pertinent to the matter presently before us, the fact remains that the State Health Officer’s decision was not based on the legal mechanisms that accompany expiration or lapse of the CONs. It is undisputed that Brentwood was out of time to request an extension of the CONs. Instead, the State Health Officer’s decision was based on the conclusion that Brentwood had not substantially undertaken to complete the two CONs at issue and that there had been no good faith effort to complete the projects contemplated by the CONs. Accordingly, Brentwood experienced no prejudice based on the attorney general’s opinion, and we find no merit to this issue.
 

 IV. ARBITRARY AND CAPRICIOUS REVOCATION
 

 ¶ 30. In its final issue, Brentwood claims the hearing officer’s decision was arbitrary and capricious. We disagree. The CONs were amended on September 5, 2001. At that time, the facility that would house the beds contemplated by the CONs was to be built for a specific capital expenditure amount on a specific tract of land in Warren County. Approximately three and one half years later, Brentwood estimated that the project was 2% complete. Brent-wood reported that it had spent $200,000 on the project and that it was investigating potential construction locations — despite the fact that the location was already specified by the 2001 amendments to the CONs. Brentwood presented absolutely no evidence that it had done anything to advance the project as contemplated by the 2001 amendments.
 

 ¶ 31. In September 2006, Brentwood again stated that it was trying to find an appropriate location for the facility and that it was determining whether the project was feasible. Brentwood estimated that the project was 3% complete at that time. Eighteen months after its 2% estimation, Brentwood was only 1% closer to completion.
 

 ¶ 32. Mississippi Code Annotated section 41-7-195 (Rev.2005) sets forth as follows:
 

 (1) A [CON] shall be valid
 
 only for the
 
 defined scope,
 
 physical location
 
 and person named in the application. A[CON] shall not be transferable or assignable nor shall a project or capital expenditure project be transferred from one person to another, except with the approval of the [MSDH]. A[CON] shall be valid for the period of time specified therein.
 

 (2) A [CON] shall be issued for a period of twelve (12) months, or such other lesser period as specified by the [MSDH],
 

 (3) The [MSDH] may define by regulation, not to exceed six (6) months, the time for which a[CON] may be extended.
 

 (4) If commencement of construction or other preparation is not substantially undertaken during a valid [CON] period or the [MSDH] determines the applicant is not making a good faith effort to obligate such approved expenditure, the
 
 *785
 
 [MSDH] shall have the right to withdraw, revoke or rescind the [CON].
 

 (Emphasis added). The Legislature has defined “commencement of construction” in Mississippi Code Annotated section 41-7-173(e) (Rev.2005) as follows:
 

 “Commencement of construction” means that all of the following have been completed with respect to a proposal or project proposing construction, renovating, remodeling or alteration:
 

 (i) A legally binding written contract has been consummated by the proponent and a lawfully licensed contractor to construct and/or complete the intent of the proposal within a specified period of time in accordance with final architectural plans which have been approved by the licensing authority of the [MSDH];
 

 (ii) Any and all permits and/or approvals deemed lawfully necessary by all authorities with responsibility for such have been secured; and
 

 (iii) Actual bona fide undertaking of the subject proposal has commenced, and a progress payment of at least one percent (1%) of the total cost price of the contract has been paid to the contractor by the proponent, and the requirements of this paragraph (e) have been certified to in writing by the [MDSH],
 

 Force account expenditures, such as deposits, securities, bonds, et cetera, may, in the discretion of the [MSDH], be excluded from any or all of the provisions of defined commencement of construction.
 

 ¶ 33. It is clear that the MSDH’s decision was not arbitrary or capricious when it concluded that Brentwood did not do anything that qualifies as “commencement of consti'uction” or “a good faith effort to obligate [the] approved expenditure.” The Legislature clearly mandated that “[a][CON] shall be valid
 
 only for the defined ... physical location
 
 ... named in the [CON] application.” Miss.Code Ann. § 41-7-195(1) (emphasis added). Under the circumstances, it is irrelevant that Brentwood attempted to move the CONs. In its second progress report, Brentwood stated that it had spent $200,000 on the project. However, the evidence indicated that $70,000 of that amount went toward lobbying the Legislature during the 2006 and 2007 legislative sessions. Brentwood wanted the Legislature to amend the relevant CONs to move the beds out of Warren County.
 

 ¶ 34. After the MSDH issued its notice of intent to revoke the CONs, Brentwood took certain measures to find an appropriate location for a facility, but none of those efforts were focused on constructing the proposed facility at the defined location contemplated by the amended CONs. Instead, Brentwood hired an architect, negotiated a potential lease of an existing facility, and acquired an option to purchase property that was different from the contemplated facility site. To be entirely clear, Brentwood obviously had the right to make a business decision that favored relocating the beds to existing facilities in Rankin County and Lauderdale County, but that decision carried the risk that the MSDH could find it appropriate to revoke the CONs. Additionally, it seems reasonable that Brentwood would make a business decision to avoid spending capital on completing the project after it received the MSDH’s notice of intent to revoke the CONs, but the events that occurred before the MSDH issued its notice of revocation clearly indicate that Brentwood focused its efforts on moving the project, rather than completion of the project contemplated by the CONs. It follows that we cannot find that the MSDH abused its discretion or that its decision was arbitrary and capri
 
 *786
 
 cious. Accordingly, we find no merit to this issue.
 

 ¶ 35. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. IRVING, J., NOT PARTICIPATING.
 

 [1]
 

 . The CONs were first awarded to the Children's Hospital of Vicksburg, LLC. (Children's Hospital). Children's Hospital later agreed to transfer ownership of the CONs to Brentwood. That transfer
 
 became
 
 effective upon the MSDH's September 5, 2001, approval of the amendment and transfer of the CONs. In 2004, Psychiatric Solutions, Inc., (PSI) acquired Brentwood. For clarity's sake, we collectively refer to Brentwood as the owner of the CONs throughout this opinion.
 

 [2]
 

 . According to Dawkins, his responsibilities included direct oversight over the MSDH’s CON program.
 

 [3]
 

 . To be precise, Mississippi Code Annotated section 41 — 7—191 (4)(a)(iii) and 41 — 7—191 (3)(b) both use discretionary "may issue" language as opposed to mandatory "shall issue” language.
 

 [4]
 

 . We recognize that the record currently before us contains a set of findings of fact and conclusions of law in which, incident to the summary judgment proceedings initiated by Brentwood that are not directly related to the matter currently before us, the Hinds County Chancery Court found that the transfer provision was unconstitutional because the Mississippi Legislature "usurped” the MSDH's executive administrative authority over the CON program when it added the transfer language. That decision is not an issue on appeal before this Court, and we do not disturb it. We merely mention these provisions to demonstrate the fact that the Legislature did not intend to limit the MSDH's authority to revoke the CONs by making the CONs exist indefinitely until further legislative action.
 

 [5]
 

 . This provision of the CON manual is based on Mississippi Code Annotated section 41-7-197(2) (Rev.2005), which sets forth that the State Health Officer "shall consider only the record in making his decision, and shall not consider any evidence or material which is not included therein.”