# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-SA-00098-SCT

*MISSISSIPPI DIVISION OF MEDICAID AND DREW SNYDER, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE MISSISSIPPI DIVISION OF MEDICAID*

*v.*

*WOMEN'S PAVILION OF SOUTH MISSISSIPPI, PLLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/30/2022 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| TRIAL COURT ATTORNEYS: | THOMAS L. KIRKLAND, JR. |
| | ALLISON CARTER SIMPSON |
| | MATTHEW DAVID SITTON |
| | JANET McMURTRAY |
| | MAUREEN BURKE SPEYERER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JANET McMURTRAY |
| | MAUREEN BURKE SPEYERER |
| ATTORNEYS FOR APPELLEE: | THOMAS L. KIRKLAND, JR. |
| | ALLISON CARTER SIMPSON |
| | MATTHEW DAVID SITTON |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED AND REMANDED - 03/07/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND MAXWELL, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. In 2021, this Court overruled past precedent giving deference to an agency's interpretation of its own administrative rules. Instead, courts "review agency interpretations

of rules and regulations de novo, without deference to the agency's interpretation."[1] Applying this de novo review, the Hinds County Chancery Court, First Judicial District, concluded that the hearing officer overseeing a Medicaid provider's appeal failed to apply the clear rules governing Medicaid administrative appeals. These rules—in place at the time of the administrative appeal—required the hearing officer to provide "findings of fact and a determination of the issues presented."[2] But the hearing officer instead applied the deferential standard *courts* apply to final agency decisions and merely evaluated whether Medicaid's initial decision was supported by substantial evidence. Because the hearing officer failed to follow Medicaid's administrative rules, the chancellor vacated Medicaid's provider-related decision and remanded the issue of the provider's reimbursement rate to the hearing officer.

¶2.     The Mississippi Division of Medicaid (Medicaid) appealed, arguing its hearing officer was right to apply a deferential standard when reviewing the initial Medicaid reimbursement-rate decision because he was essentially acting as an appellate judge. Medicaid asks this Court to reinstate the final agency decision and affirm its reimbursement-rate decision. But Medicaid cannot get around the plain language of its own administrative rules that governed the administrative appeal. These rules did not direct the hearing officer to defer to the

---

[1] ***Miss. Methodist Hosp. & Rehab. Ctr., Inc. v. Miss. Div. of Medicaid***, 319 So. 3d 1049, 1055 (Miss. 2021).

[2] Miss. Admin. Code Pt. 300, R. 1.1(B)(7) (effective Aug. 1, 2020). On March 1, 2023, Medicaid changed its rules governing administrative appeals. When this opinion refers to the new rules, it will cite the March 1, 2023 effective date. But whenever this opinion refers to the old rules—the rules in place at the time of Women's Pavilion's administrative appeal—it will cite the August 1, 2020 effective date.

agency's initial decision. Instead, they required the hearing officer to make findings of fact and a determination of the issues presented. For this reason, we affirm the decision of the Hinds County Chancery Court, which vacated Medicaid's reimbursement-rate decision. And we remand the reimbursement-rate issue to Medicaid.

## Background Facts & Procedural History

¶3. Women's Pavilion of South Mississippi, PLLC, is a physician-owned OBGYN clinic in Hattiesburg, Mississippi. In 2016, Medicaid approved Women's Pavilion as a Rural Health Clinic. Medicaid compensates Rural Health Clinics by paying an "encounter rate"—that is, a set amount of money per visit by a Medicaid patient. Medicaid State Plan, Attachment 4.19-B, § 2b.II (State Plan 4.19-B). The rate is determined by dividing a year's worth of reported costs to run the clinic by a year's worth of patient visits. Once this rate is set, it is adjusted annually for inflation. *Id.* § 2b.II(B). But it does not otherwise change. So setting the encounter rate is critical to both Medicaid and the provider.

### I. Medicaid Calculated Women's Pavilion's Encounter Rate

¶4. After some back-and-forth with Women's Pavilion, Medicaid set the clinic's encounter rate at $157.94. This rate was higher than the average rate of $116.89 paid to rural health clinics in the area. But it was substantially lower that the $207.71 rate that would have applied had Medicaid accepted at face value the annual cost report Women's Pavilion submitted to Medicare.[3]

---

[3] Medicaid discovered Women's Pavilion had under-reported the number of patient visits in its Medicare cost report. Instead of the 6,500 visits reported, Women's Pavilion had 10,003 visits. Women's Pavilion does not contest this correction. Catching this error alone changed the encounter rate from $318.03 to $207.71.

¶5.     But Medicaid did not simply accept Women's Pavilion Medicare annual cost report.[4] Instead, the agency tasked an auditor to make a retroactive adjustment.  Significantly, the auditor determined $823,253.90 in compensation to the five physician owners of the clinic was unreasonably high.  This was because the five owners only worked part time for the Hattiesburg clinic.  Under Medicaid policy, reasonable compensation for physician owners who work part time must be based on a full-time equivalency (FTE).  The auditor calculated the owners' FTE by dividing the collective amount of hours the five owner physicians worked by 2,080—which represents 40 hour a week for 52 weeks—to reach an FTE of 1.09.  Because $823,253.90 in compensation for the equivalent 1.09 full-time physician seemed extremely high compared to other rural health clinics, the auditor set out to determine a reasonable compensation rate.

¶6.     The auditor did this by turning to the federal Medicare and Medicaid Provider Reimbursement Manual (PRM). Ctrs. for Medicaid & Medicare Servs., *Provider Reimbursement Manual*, Pt. 1, Ch. 9 (PRM).  PRM 905.7 provides two options for determining a reasonable amount of compensation for physician owners of rural health clinics.  The agency could "establish[] ranges of compensation for comparable institutions

_____

    [4] Medicaid does not require its own separate cost report.  Instead, it uses the cost report submitted to Medicare.  Throughout its appeal, Women's Pavilion has taken the position that, once Medi*care* accepted the cost report as reasonable, Medi*caid* had to do the same.  But Medicaid asserts there is a critical difference between how the two agencies handle encounter rates for rural health clinics.  According to Medicaid, Medicare has a rate cap, which was $82.30 in 2017, the year used to set the permanent rate.  So once the costs-divided-by-visits exceeds the cap, Medicare had little incentive to scrutinize the amount of costs and the number of visits reported, in Medicaid's view.  Medicaid is different.  It has no cap.  So Medicaid asserts it had a strong incentive to ensure the costs reported by Women's Pavilion were reasonable.

as provided in § 905.1"—this is the route Women's Pavilion has insisted Medicaid must follow. PRM 905.7. "Alternatively," Medicaid could use a salary range developed by the federal Center for Medicare & Medicaid Services presented in a table in PRM 905.7. *Id.* The auditor chose to use the chart. After consulting some internet websites, he determined the upper amount on the chart for the Southeast region, $294,555, was a reasonable amount of compensation.[5] He then multiplied this amount by the FTE of 1.09 to reach $321,064 in adjusted owner compensation. This led to the final encounter rate of $157.94.

## II.    Women's Pavilion Requested an Administrative Hearing

¶7.    Medicaid communicated this final rate by letter on April 26, 2019. The letter informed Women's Pavilion it could file an appeal with Medicaid under Administrative Code, Title 23, Part 300, Chapter 1. *See* 23 Miss. Admin. Code Pt. 300, R. 1.1(A) (effective Aug. 1, 2020) (making administrative hearings available to "providers who are dissatisfied with a decision of the Division of Medicaid . . . relating to payment rates or reimbursement"). Women's Pavilion timely appealed and requested an administrative hearing, so Medicaid appointed James Bell as hearing officer. 23 Miss. Admin. Code Pt. 300, R. 1.1(B) (effective Aug. 1, 2020).

¶8.    In April 2021, Judge Bell held a two-day hearing. Women's Pavilion's evidence focused on the physician-compensation issue. Women's Pavilion proffered an expert who

---

[5] In addition to consulting the CMS table provided in Section 905.7, the auditor considered the Mississippi State Occupational Employment and Wage Estimate for 2017. The average OBGYN salary was $220,650. He also consulted three websites—salary.com, indeed.com, and "Nest." These websites similarly placed salaries for OBGYN's in the area in the $220,000-$240,000 range.

5

opined that calculating full-time equivalency by using 2,080 hours per year was unreasonable because it did not factor in vacation. This expert also proffered that compensation in the range of $580,000 to $630,000 would be more reasonable. Judge Bell sustained Medicaid's objection to this expert's testimony, ultimately finding it unhelpful because it failed to factor in relevant federal Medicaid policy.

¶9. Indeed, at the end of the hearing, Judge Bell expressed concerned that Women's Pavilion was asking him to *make* policy. He was specifically concerned with Women's Pavilion's challenging the number of hours used to calculate FTE and insisting the auditor could not choose to use the PRM salary-range chart. In his view, the role of the hearing officer was not to "set[] policy or what ought to be on a chart" but rather "to determine whether the Division followed its regulations and did the math right." He asked both parties to address his concerns in their respective post-hearing briefs.

¶10. In its post-hearing brief, Medicaid "agree[d] with Judge Bell that Women's Pavilion is asking him to do more than not only what a hearing officer may do, but also more than any reviewing court may do." Medicaid asserted Judge Bell was in the same position as any appellate judge—he was there to review a final agency decision. So Medicaid argued that the hearing officer's role was limited to the same deferential standard of review that courts apply to final agency decisions. *See **Miss. Methodist**, 319 So. 3d at 1054.

¶11. Women's Pavilion's took the opposite view. Relying on a certificate-of-need decision, ***Brentwood Health Management of Mississippi v. Mississippi State Department of Health***, 29 So. 3d 775, 780-81 (Miss. Ct. App. 2009), the clinic reasoned that the final

6

agency decision comes *after* the administrative hearing. So the hearing officer's role was not to review a decision—it was to *make* a decision based on original recommended findings of fact and conclusions of law.

¶12. In his recommendation to Medicaid's director, Judge Bell agreed with Medicaid—that his role as administrative judge is the same as a court reviewing an agency decision. Citing this Court's standard for its review of final agency decision as the applicable standard of review for the administrative hearing, Judge Bell "f[ou]nd that the decision to set the encounter rate for Women's Pavilion (1) was supported by substantial evidence, (2) was not arbitrary and capricious, (3) was within the power of the Division of Medicaid to make, and (4) did not violate a statutory or constitutional right of Women's Pavilion." *See Miss. Methodist*, 319 So. 3d at 1054. So he recommended Medicaid's director adopt the auditor's final decision.[6]

### III. Women's Pavilion Appealed to Hinds County Chancery Court

¶13. Medicaid's director agreed with and adopted Judge Bell's recommendation as the final agency decision. And Women's Pavilion timely appealed to the Hinds County Chancery Court. While Women's Pavilion raised several issues related to physician-owner compensation, the chancellor solely addressed the clinic's claim that the hearing officer applied the wrong standard of review.[7] The chancellor concluded that Judge Bell, by citing

---

[6] Judge Bell did, however, find a clerical error in the FTE calculation. Instead of 1.09, the actual number was 1.098. He recommended calculating a new base rate based on this correction.

[7] Women's Pavilion had also argued Medicaid was required to accept the Medicare cost report when setting the Medicaid encounter rate, Medicaid was required to establish a

*Mississippi Methodist*, 319 So. 3d at 1054, improperly applied the standard of review for *courts* reviewing a final administrative decision.  Instead, the hearing officer had to follow Medicaid's administrative rules governing appeals.

¶14.    Specifically, under Rule 1.1(B)(7), at the close of the hearing, the hearing officer had to provide "findings of fact and a determination of the issues presented."  23 Miss. Admin. Code Pt. 300, R. 1.1(B)(7) (effective Aug. 1, 2020). Thus, in the chancellor's view, "the proper standard of review [wa]s . . . whether there is sufficient evidence, 'based on the facts as [the hearing officer] determines them to be' . . . to substantiate the agency decision." (quoting 23 Miss. Admin. Code Pt. 300, R. 1.1(B)(4) (effective Aug. 1, 2020)).  Because "i[t wa]s not clear whether or to what extent the application of the proper standard of review will affect or alter DOM's final decision," the chancellor vacated Medicaid's final decision and remanded the matter to Medicaid "for the hearing officer to apply the proper standard of review."

¶15.    Medicaid then appealed to this Court.

**Discussion**

¶16.    We begin by noting that four months after the chancery court's ruling, Medicaid revised its administrative rules governing administrative appeals by providers. Now the rules directly state that the standard of review the hearing officer is to apply is the same standard courts apply to final agency decisions.  Thus, the hearing officer now evaluates whether the

---

compensation range based on evaluating comparable institutions, Medicaid did not comply with PRM Section 905.7 when setting the base rate, and the hearing officer erroneously excluded its expert's testimony.

agency action was unsupported by substantial evidence, was arbitrary and capricious, was beyond the power of the administrative agency to make, or violated the complaining party's statutory or constitutional rights. 23 Miss. Admin. Code Pt. 300, R. 3.5 (effective March 1, 2023). So our decision is limited to the case before us.

¶17. Moreover, in *Mississippi Methodist*, we overruled precedent that required we give deference to an agency's own interpretation of its own administrative rules. *Miss. Methodist*, 319 So. 3d at 1055. Instead, we "review agency interpretations of rules and regulations de novo." *Id.* This means we cannot give deference to Judge Bell's interpretation of what his role was under Rule 1.1. Neither do we take into account that Medicaid, by revising its rules to track Judge Bell's adopted standard of review, has strongly signaled its view on the matter.

¶18. Rather, we must look to the plain language of Rule 1.1—the rule in place at the time of the administrative hearing. And we must ask whether Judge Bell, by merely examining whether the Medicaid's encounter rate was support by substantial evidence, met the procedural requirements of Rule 1.1(B). After review, we agree with the chancellor that the hearing officer clearly erred by applying caselaw that governs court review of an agency decision and not Medicaid's own administrative rules governing provider appeals.

¶19. Rule 1.1(B)(6) required that, "[a]fter all witnesses have been heard and all evidence has been presented, the hearing officer shall, as soon as possible, but not more than sixty (60) days, review the evidence and record of the proceedings and, *based on the facts as he/she determines them to be*, prepare a written summary of his/her findings and make a written recommendation to the Executive Director of action to be taken by the Division of

9

Medicaid." 23 Miss. Admin. Code Pt. 300, R. 1.1(B)(6) (effective Aug. 1, 2020) (emphasis added). Rule 1.1(B)(7) further directed that "[t]he recommendations of the hearing officer shall be in writing and shall contain *findings of fact and a determination of the issues presented*." 23 Miss. Admin. Code Pt. 300, R. 1.1(B)(7) (effective Aug. 1, 2020) (emphasis added). A plain reading of these two provision shows the hearing officer was required to make factual findings and determine issues and not merely decide whether the auditor's findings and determination were supported by substantial evidence.

¶20. We do not fault Judge Bell for raising a legitimate concern about what impact Women's Pavilion's requests—such as to reduce the number of hours for FTE and/or consider compensation deemed abnormally high under federal policy—would have on federal Medicaid policy if granted and whether it was his role to be a policy maker. But we find no support for his decision to adopt *this* Court's deferential standard for reviewing agency decisions as a way to avoid making policy when the result was the application of a standard of review that conflicted with then-existing Rule 1.1's plain language.

¶21. For this reason, we agree with the chancellor that Medicaid's final decision, which adopted the hearing officer's recommendation, must be vacated. We affirm the chancellor's order to vacate and remand the reimbursement-rate issue to Medicaid.

¶22. **AFFIRMED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. BEAM, J., NOT PARTICIPATING.**

10